18 MAG 0335

ORIGINAL

Approved: *Robert B. Sobelman*
ROBERT B. SOBELMAN
Assistant United States Attorney

Before:      THE HONORABLE HENRY B. PITMAN
             United States Magistrate Judge
             Southern District of New York

- - - - - - - - - - - - - - - - - - - X
                                       :   **SEALED COMPLAINT**
UNITED STATES OF AMERICA               :
                                       :   Violations of
     - v. -                            :   18 U.S.C. §§ 1028A,
                                       :   1344, and 1956,
LaCHANCE BROWN-DAY,                    :   and 2.
                                       :
                    Defendant.         :   COUNTY OF OFFENSE:
                                       :   NEW YORK
- - - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

       GREGORY HOLM, being duly sworn, deposes and says that he is a Special Agent with the United States Secret Service, and charges as follows:

## COUNT ONE

### (Bank Fraud)

       1.    From at least in or about September 2015 up to and including at least in or about December 2016, in the Southern District of New York and elsewhere, LaCHANCE BROWN-DAY, the defendant, willfully and knowingly, did execute and attempt to execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, BROWN-DAY used false identification to open bank accounts controlled by BROWN-DAY.

       (Title 18, United States Code, Sections 1344 and 2.)

## COUNT TWO

### (Aggravated Identity Theft)

2. From at least in or about September 2015 up to and including at least in or about December 2016, in the Southern District of New York and elsewhere, LaCHANCE BROWN-DAY, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, BROWN-DAY used false identification documents bearing the names of individuals other than BROWN-DAY during and in relation to the bank fraud charged in Count One of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

## COUNT THREE

### (Money Laundering)

3. From at least in or about September 2015 up to and including at least in or about December 2016, in the Southern District of New York and elsewhere, LaCHANCE BROWN-DAY, the defendant, knowingly did conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, BROWN-DAY used false identification to open bank accounts controlled by BROWN-DAY, and deposited, transferred, and withdrew money from those accounts, which involved the proceeds of a specified unlawful activity, that is bank fraud, knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

(Title 18, United States Code, Section 1956(a)(1)(B)(i) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4. I am a Special Agent with the United States Secret Service ("USSS"). I have been personally involved in the investigation of this matter, and I base this affidavit on that

experience, on my conversations with other law enforcement officials, and on my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Overview

5. As set forth in greater detail below, I respectfully submit that there is probable cause to believe that LaCHANCE BROWN-DAY, the defendant, and others known and unknown, have participated in a scheme that primarily involves impersonating individuals, professionals, or businesses in the course of otherwise ordinary financial transactions; fraudulently inducing the counterparties to those transactions to transfer funds to bank accounts controlled and operated by BROWN-DAY and her co-conspirators, some of which were registered to shell corporations or the identities of other persons; and BROWN-DAY withdrawing the scheme's fraudulent proceeds in cash or transferring the funds to other accounts.

## Fraudulent Use of Victim-10's Identity

6. Based on my review of documents provided by Bank of America, I have learned, among other things, the following:

    a. On or about July 2, 2016, an individual purporting to be another person ("Victim-10")[1] opened a bank account ("Bank of America Account-1") at a Bank of America location in Manhattan, New York, in the name of a purported business entity called Swann Consulting Services, Inc.; and

    b. The individual who opened the account presented Bank of America with a Texas driver's license bearing Victim-10's name.

7. Based on my conversations with a Special Agent with the USSS ("Special Agent-4"), who spoke with Victim-10, I have learned, among other things, the following:

    a. Victim-10 resided in Texas in or about 2016;

---

[1] The defined terms referenced herein are consistent with prior applications and filings prepared in this investigation.

      b. Victim-10 never created, owned, or operated a business called Swann Consulting Services, Inc.; and

      c. Victim-10 did not open or hold a UPS box or bank account in Manhattan, New York, in or about 2016.

8. On or about December 6, 2017, I interviewed an employee of the Bank of America location in Manhattan, New York, at which Bank of America Account-1 was opened. Upon reviewing a photo array prepared by the USSS, the employee identified the individual who opened Bank of America Account-1 as the same person depicted in a photograph of LaCHANCE BROWN-DAY, the defendant, which was provided by the Georgia Department of Driver Services.

9. Based on my conversations with an individual who resides in Williamsburg, Virginia ("Victim-15") and my review of documents provided by Victim-15, I have learned, among other things, the following:

      a. In or about November 2015, Victim-15's spouse died;

      b. Shortly thereafter, Victim-15 received a telephone call on her deceased spouse's cellphone;

      c. The caller claimed that Victim-15's deceased spouse had previously invested $1,000,000, and that the supposed investment, which was purportedly made in the United Kingdom, was then worth approximately $10,000,000 to $12,000,000;

      d. The caller told Victim-15 that a payment would be required to receive the purported investment proceeds;

      e. Between in or about January and at least in or about August 2016, Victim-15 corresponded by email with an individual who purported to be the caller;

      f. On or about August 16 and 25, 2016, at the direction of the individual with whom Victim-15 corresponded by email, Victim-15 wire transferred $37,540 and $80,000, respectively, to Bank of America Account-1; and

      g. Subsequently, Victim-15 learned that Victim-15's deceased spouse had not previously invested $1,000,000 in the United Kingdom.

10. Based on my review of documents provided by Bank of America, I have learned, among other things, that on or about August 16 and 25, 2016, Bank of America Account-1 received wire transfers in the amounts of $37,540 and $80,000, respectively, from a bank account held by Victim-15.

<u>Fraudulent Use of Victim-11's Identity</u>

11. Based on my review of documents provided by the United Parcel Service ("UPS"), I have learned, among other things, the following:

    a. On or about August 26, 2016, an individual purporting to be another person ("Victim-11") opened a UPS box in Manhattan, New York ("UPS Box-2") in the name a purported business entity called Devo Cane, Inc.; and

    b. The individual who opened UPS Box-2 presented a North Carolina driver's license bearing Victim-11's name, paid with a credit card bearing another person's name ("Victim-12"), and listed Victim-12's name as one that may receive mail at UPS Box-2.

12. Based on my review of documents provided by Citibank, I have learned, among other things, the following:

    a. On or about August 26, 2016, an individual purporting to be Victim-11 opened a bank account ("Citibank Account-2") at a Citibank location in Manhattan, New York, in the name of a purported business entity called Devo Cane, Inc.; and

    b. The individual who opened the account provided Citibank with Victim-11's social security number and a date of birth exactly one month prior to Victim-11's date of birth, and listed the address for UPS Box-2 as the mailing address for the account.

13. Based on my review of documents provided by JP Morgan Chase, I have learned, among other things, the following:

    a. On or about August 26, 2016, an individual purporting to be Victim-11 opened a bank account ("JP Morgan Account-1") at a JP Morgan Chase bank location in Manhattan, New York, in the name of Devo Cane, Inc.; and

   b. The individual who opened the account provided JP Morgan Chase with Victim-11's social security number and a date of birth exactly one month prior to Victim-11's date of birth.

  14. Based on my conversations with an individual who resides in San Diego, California ("Victim-16"), I have learned, among other things, the following:

   a. In or about early October 2016, Victim-16 was contacted by email and text message by an individual in the course of cultivating a purported online-based romantic relationship, in which that individual claimed to be owed $11,000,000 and requested money from Victim-16 to pay for the release of the supposed funds and for related tax payments;

   b. On or about October 21, 2016, at the direction of the individual with whom Victim-16 was communicating by email and text message, Victim-16 wire transferred $20,000 to JP Morgan Account-1;

   c. On or about October 27, 2016, at the direction of the individual with whom Victim-16 was communicating by email and text message, Victim-16 wire transferred $12,500 to JP Morgan Account-1; and

   d. Subsequently, Victim-16 learned that the individual with whom Victim-16 had been communicating had fabricated the purported $11,000,000 owed.

  15. Based on my review of documents provided by JP Morgan, I have learned, among other things, the following:

   a. On or about October 21, 2016, JP Morgan Account-1 received a wire transfer in the amount of $20,000 from an account held by Victim-16; and

   b. On or about October 27, 2016, JP Morgan Account-1 received a wire transfer in the amount of $12,500 from an account held by Victim-16.

  16. Based on my review of documents provided by TD Bank, I have learned, among other things, the following:

   a. On or about December 7, 2016, an individual purporting to be Victim-11 opened a bank account ("TD Account-1") at a TD Bank location in Manhattan, New York, in the name of Devo Cane, Inc.; and

b. The individual who opened the account provided TD Bank with Victim-11's name, social security number, and a date of birth exactly one month prior to Victim-11's date of birth; and

c. On or about December 9, 2016, a check from JP Morgan Account-1 in the amount $101,687.13 was deposited in TD Account-1.

17. On or about December 6, 2017, I interviewed two employees of the TD Bank location in Manhattan, New York, at which TD Account-1 was opened. Upon reviewing a photo array prepared by the USSS, both employees identified the individual who opened TD Account-1 as the same person depicted in a photograph of LaCHANCE BROWN-DAY, the defendant, which was provided by the Georgia Department of Driver Services.

18. Based on my conversations with a Special Agent with the USSS ("Special Agent-3"), who spoke with Victim-11, I have learned, among other things, the following:

a. Victim-11 resided in North Carolina from at least in or about 2009 until at least in or about December 2016;

b. Victim-11 never created, owned, or operated a business called Devo Cane, Inc.; and

c. Victim-11 did not open or hold a UPS box or bank account in Manhattan, New York, in or about 2016.

Fraudulent Use of Victim-12's Identity

19. Based on my review of documents provided by UPS, I have learned, among other things, the following:

a. On or about September 9, 2015, an individual purporting to be Victim-12 opened a UPS box ("UPS Box-3") at a UPS location in Atlanta, Georgia; and

b. The individual who opened UPS Box-3 presented a Connecticut driver's license bearing Victim-12's name and a photograph that appears to depict the same person depicted in a photograph of LaCHANCE BROWN-DAY, the defendant, which was provided by the Georgia Department of Driver Services.

7

20.  Based on my review of documents provided by SunTrust Bank, I have learned, among other things, the following:

a.  On or about April 15, 2016, an individual purporting to be Victim-12 opened a bank account ("SunTrust Account-1") at a SunTrust Bank location in East Point, Georgia, in the name of a purported business entity called K Sibbles Enterprises LLC; and

b.  In opening the account, the individual who opened the account provided to SunTrust Bank the address of UPS Box-3.

21.  Based on my conversations with an individual who resides in Wichita, Kansas ("Victim-13"), I have learned, among things, the following:

a.  In or about April 2016, Victim-13 received a telephone call from an individual purporting to be an attorney in the United Kingdom, who claimed that a relative of Victim-13's spouse had died and that Victim-13's spouse was set to inherit a substantial sum of money;

b.  The purported attorney told Victim-13 that a payment would be required to receive the inheritance; and

c.  On or about April 26, 2016, at the purported attorney's direction, Victim-13 wire transferred $7,310 to SunTrust Account-1.

22.  Based on my review of documents and surveillance photographs provided by SunTrust Bank, I have learned, among other things, the following:

a.  On or about April 26, 2016, SunTrust Account-1 received a wire transfer in the amount of $7,310 from a bank account held in the name of Victim-13;

b.  On or about April 28 and 29, 2016, an individual that appears, based on my review of a photograph of LaCHANCE BROWN-DAY, the defendant, which was provided by the Georgia Department of Driver Services, to be BROWN-DAY, withdrew a total of approximately $2,000 from an automated teller machine ("ATM") in Atlanta, Georgia.

23.  Based on my review of documents provided by TD Bank, I have learned, among other things, the following:

      a. On or about September 9, 2016, an individual purporting to be Victim-12 opened a bank account ("TD Account-2") at a TD Bank location in Manhattan, New York, in the name of K Sibbles Enterprises LLC;

      b. In opening the account, the individual who opened the account provided to TD Bank the address of UPS Box-2 and the same phone number that was provided to SunTrust Bank for SunTrust Account-1; and

      c. On or about September 12, 2016, a SunTrust Bank cashier's check for the balance held in SunTrust Account-1 in the amount of $46,041.59 was deposited into TD Account-2.

24. Based on my conversations with an individual who resides in Trinidad and Tobago ("Victim-14") and my review of documents provided by Victim-14, I have learned, among other things, the following:

      a. In or about October 2016, Victim-14 owned and operated a business in Trinidad and Tobago;

      b. In or about early October 2016, Victim-14 received an email which purported to be from one of the business's vendors based in Miami, Florida, in which the vendor requested payment for an invoice in the approximate amount of $20,000 and directed Victim-14 to send those funds via wire transfer to TD Account-2; and

      c. On or about October 17, 2016, Victim-14 wire transferred approximately $20,000 from an account held by the business to TD Account-2.

25. Based on my review of documents provided by TD Bank, I have learned, among other things, that on or about October 17, 2016, TD Account-2 received a wire transfer in the amount of $19,975 from an account held by Victim-14's business.

26. Based on my conversations with Victim-12, I have learned, among other things, the following:

      a. Victim-12 resided in Connecticut from at least in or about 2000 until at least in or about December 2016;

      b. Victim-12 never created, owned, or operated a business called K Sibbles Enterprises LLC; and

c. Victim-12 did not open or hold a UPS box or bank account in East Point, Georgia, or Manhattan, New York, in or about 2016.

* * *

27. Based on my participation in this investigation, I have learned, among other things, that the scheme described above appears to have used the bank accounts described herein and several others to defraud or attempt to defraud at least several other victims and launder the proceeds of the scheme, totaling more than $1,000,000 in attempted and realized losses.

WHEREFORE, the deponent respectfully requests that a warrant be issued for the arrest of LaCHANCE BROWN-DAY, the defendant, and that she be arrested and imprisoned or bailed, as the case may be.

GREGORY HOLM
Special Agent
United States Secret Service

Sworn to before me this
17th day of January, 2018

THE HONORABLE HENRY B. PITMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

10